# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
| --- | --- | --- |
| | : | No. 1:16-cr-00240-01 |
| v. | : | |
| | : | (Judge Kane) |
| DEREK PELKER, | : | |
| Defendant | : | |

## MEMORANDUM

Before the Court is Defendant Derek Pelker ("Defendant")'s motion in limine to preclude the Government from introducing Defendant's proffer statement at trial. (Doc. No. 248.) For the reasons provided herein, the Court will deny Defendant's motion.

## I. BACKGROUND

On August 24, 2016, a federal grand jury returned a five-count indictment charging Defendant, along with co-defendants Ryan Miller and Andrew Ishman, with conspiracy, armed bank robbery, possession of a firearm in furtherance of a crime of violence, and being a felon in possession of a firearm in violation of 18 U.S.C. §§ 371, 2113, 924(c), and 922(g), respectively. These charges were docketed at 1:16-cr-00241. On the same date, a federal grand jury also returned a two-count indictment charging Defendant and co-defendants Keith Pelker and Shannon Gadzouris with conspiracy and armed bank robbery in violation of 18 U.S.C. §§ 371 and 2113, respectively, and this indictment was docketed at 1:16-00240.[1] (Doc. No. 1.) Upon the grand juries' return of these indictments, both actions were assigned to the Honorable John E. Jones, III.

Defendant subsequently entered a plea of not guilty as to all counts set forth in both indictments on August 31, 2016 (Doc. No. 26), and Daniel M. Myshin was appointed to

---

[1] Unless otherwise noted, all citations to docket entries herein pertain to the docket numbered 1:16-cr-00240.

represent Defendant in both actions pursuant to the Criminal Justice Act ("CJA") on the same date (Doc. No. 25). On September 30, 2016, a scheduling order was issued, setting jury selection and trial for both actions to take place on November 7, 2016. (Doc. No. 52.) Subsequently, with the exception of Defendant, each of the aforementioned co-defendants in both criminal actions entered a guilty plea pursuant to a plea agreement.[2]

Defendant filed an unopposed motion to continue jury selection and trial (Doc. No. 60), which was granted on October 26, 2016, and the trial as to Defendant was then continued to February 2, 2017 (Doc. No. 62). In late December of 2016, Jeffrey A. Conrad ("Conrad") was appointed to represent Defendant pursuant to the CJA.[3] (Doc. Nos. 69, 70.) On April 4, 2017, upon a motion from the Government (Doc. No. 79), the Court ordered the consolidation of the separate indictments as to Defendant (Doc. No. 91). In granting the Government's motion to consolidate, the Court directed the Clerk to transfer Counts 1-4 of criminal action 1:16-cr-241 to criminal action 1:16-cr-240 and to close the criminal action docketed at 1:16-cr-241. (Id. at 4.) Additionally, the Court ordered that jury selection and trial be continued to May 9, 2017. (Id.)

On May 8, 2017 – one day prior to when jury selection was scheduled to begin – the Government filed a superseding information, which set forth the following additional charges: three counts of armed bank robbery under 18 U.S.C. § 2113; one count of possessing a firearm in furtherance of a crime of violence under 18 U.S.C. § 924(c); and one count of being a felon in possession of a firearm pursuant to 18 U.S.C. § 922(g). (Doc. No. 110.) On the same date,

---

[2] Andrew Ishman, Keith Pelker, and Shannon Gadzouris each entered a guilty plea on October 3, 2016, and Ryan Miller entered a guilty plea on December 6, 2016. As noted below, a remaining co-defendant, Ryan Martin, entered a guilty plea on December 1, 2017. (Doc. No. 212.)

[3] Prior to being represented by Conrad, Defendant was represented by Daniel Myshin ("Myshin"). On December 29, 2016, upon an ex parte motion filed by Myshin to withdraw as counsel, the Court terminated Myshin as counsel for Defendant and appointed Conrad to represent Defendant. (Doc. No. 69.)

through a written plea agreement (Doc. No. 111), Defendant entered a guilty plea as to the five counts in the superseding information (Doc. No. 116).[4] After conducting a colloquy, the Court deferred acceptance of Defendant's plea pending its review of the presentence report. During the period of time in which the plea agreement was agreed to by the parties, Defendant engaged in a proffer session with the Government, which, as explained more fully below, forms the basis for the instant motion.

Defendant subsequently moved to withdraw his guilty plea on June 16, 2017 (Doc. No. 118), and the Court denied his motion on June 18, 2017 (Doc. No. 119). Conrad then moved to withdraw as counsel for Defendant on June 23, 2017. (Doc. No. 120.) Upon granting Conrad's motion to withdraw as counsel (Doc. No. 127), the Court ordered John A. Abom to represent Defendant pursuant to the CJA on June 27, 2017 (Doc. No. 128). Defendant filed another motion to withdraw his guilty plea on August 18, 2017 (Doc. No. 137), on which the Court held a hearing on August 22, 2017 (Doc. No. 142). In an Order dated September 1, 2017, the Court granted Defendant's motion to withdraw his guilty plea and ordered jury selection and trial to begin on October 10, 2017. (Doc. No. 151.)

The Government filed a twelve-count second superseding indictment as to Defendant and Ryan Martin, a remaining co-defendant, on September 27, 2017.[5] (Doc. Nos. 163, 203.) On the same date, upon a motion from Defendant (Doc. No. 155), the Court permitted Defendant to proceed pro se and appointed John Abom to serve as standby counsel (Doc. No. 184). Following the docketing of the second superseding indictment on November 29, 2017 (Doc. No. 203), the Court issued an order of recusal (Doc. No. 206), and the instant action was reassigned to the undersigned on December 1, 2017. Defendant then entered a plea of not guilty as to all twelve

---

[4] Defendant consented to prosecution by information on May 8, 2017. (Doc. No. 115.)
[5] Ryan Martin entered a guilty plea on December 1, 2017. (Doc. No. 212.)

counts in the second superseding indictment on January 3, 2018. (Doc. No. 227.) Trial is scheduled to commence with jury selection on May 14, 2018. (Doc. No. 277.)

On February 7, 2018, Defendant filed a motion in limine "to preclude the government from introducing the Defendant's proffer statement under the proffer agreement at trial" (Doc. No. 248), which was accompanied by a brief in support (Doc. No. 249). The statement at issue resulted from plea discussions involving Defendant in May of 2017, prior to when jury selection and trial were previously scheduled to begin. The Government filed a brief in opposition on November 21, 2018 (Doc. No. 252), and Defendant filed a reply brief on March 5, 2018 (Doc. No. 257). The Court held an evidentiary hearing on May 4, 2018 to examine evidence related to the basis for Defendant's motion. (Doc. No. 277.) Having been fully briefed, Defendant's motion is ripe for disposition.

## II. LEGAL STANDARD

The admissibility of statements made during plea discussions is governed by Federal Rule of Evidence 410, which provides that:

> evidence of the following is not admissible against the defendant who made the plea or participated in the plea discussions:
>
> (1) a guilty plea that was later withdrawn;
>
> (2) a nolo contendere plea;
>
> (3) a statement made during a proceeding on either of those pleas under Federal Rule of Criminal Procedure 11 or a comparable state procedure; or
>
> (4) a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea.

Fed. R. Evid. 410(a); see also Fed. R. Crim. P. 11(f) (providing that "[t]he admissibility or inadmissibility of a plea, a plea discussion, and any related statement is governed by Federal Rule of Evidence 410").

4

This restriction is not absolute, however, and the protections articulated by Rule 410 may be waived, provided that the defendant made such a waiver knowingly and voluntarily. See United States v. Mezzanatto, 513 U.S. 196, 210 (1995) ("[A]bsent some affirmative indication that the agreement was entered into unknowingly or involuntarily, an agreement to waive the exclusionary provisions of the plea-statement Rules is valid and enforceable."). Since Mezzanatto, the United States Court of Appeals for the Third Circuit has reaffirmed the potential admissibility of such statements during trial. See, e.g., United States v. Hardwick, 544 F.3d 565, 570 (3d Cir. 2008) (finding persuasive the reasoning of additional circuits that "have upheld the use of proffer waivers at trial"). In establishing the admissibility of a statement made in the course of a plea agreement or proffer session, though, the Government bears the burden of demonstrating by a preponderance of the evidence that the waiver was made knowingly and voluntarily. See United States v. Brooks, No. 14-cr-382, 2015 WL 6509016, at *2 (D.N.J. Oct. 27, 2015) (citing Colorado v. Connelly, 479 U.S. 157, 168 (1986)); United States v. Burnett, No. 08-cr-201-03, 2009 WL 2180373, at *2 (E.D. Pa. July 17, 2009) (stating that "ordinarily the Government must show that a waiver was knowing and voluntary by a preponderance of the evidence").

## III. DISCUSSION

### A. Relevant Documents

In the course of the plea discussions in May of 2017, Defendant signed a plea agreement (Doc. No. 252, Ex. 1), addendum to the plea agreement (id., Ex. 2), and model proffer agreement (id., Ex. 3). The plea agreement reads, in pertinent part, as follows:

> Remedies for Breach. The defendant and the United States agree that in the event the court concludes that the defendant has breached the Agreement:

5

> (a) Any evidence or statements made by the defendant during the cooperation phase will be admissible at any trials or sentencings.

(Id., Ex. 1 at 21.) In addition, the addendum to the plea agreement states:

> The United States agrees that any statements made by the defendant during the cooperation phase of this Agreement shall not be used against the defendant in any subsequent prosecutions unless and until there is a determination by the court that the defendant has breached this Agreement.

(Id., Ex. 2 at 2.)

The model proffer agreement, which contains the provision waiving the application of Rule 410 to the proffer statement,[6] provides that "[e]xcept as set forth below, no statements or information provided by [Defendant] in the proffer will be used against him in the government's case-in-chief in any criminal case other than a prosecution for perjury, false statements, or obstruction of justice." (Id. ¶ 2.) The agreement also provides that "[i]n the event [Defendant] is a witness or party at any trial . . . and testifies and/or offers evidence contrary to the proffer or through counsel presents a position inconsistent with the proffer, the United States may use [Defendant's] statements and the information derived directly or indirectly from the proffer . . . including [in] its case-in-chief, and for impeachment, cross-examination, and rebuttal." (Id. ¶ 4.)

### B. Arguments of the Parties

#### 1. Arguments of Defendant

Defendant's grounds for moving in limine to preclude the introduction of his proffer statement at trial are that: (1) the agreement lacks separate contractual consideration from the

---

[6] The waiver provision provides that "there will be no limitations on the right of the United States to make derivative use of the statements and other information provided by [Defendant]." (Doc. No. 252, Ex. 3 ¶ 3.) Further, the waiver states that Defendant "agrees that Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 do not govern such derivative use." (Id. ¶ 3(b).)

6

cooperation addendum, and (2) even if the Court found the proffer to be a valid contract, the Government should not be able to introduce it at trial because Defendant did not agree to the applicable waiver provisions voluntarily. (Doc. No. 249 at 6-9.)

Defendant argues that the proffer agreement "lacks separate contractual consideration from the cooperation addendum" and is thus unenforceable. (Id. at 6.) Referring to the cooperation addendum (Id., Ex. 1), Defendant maintains that the addendum provided him "with the following consideration [in exchange for] the Defendant agreeing to cooperate with the Government": (1) that any statement made by Defendant "could not be used against him"; (2) that the addendum "[r]estricted the use of information not known to the Government prior to the proffer"; and (3) that Defendant would retain the protections of Federal Rule of Criminal Procedure 11(4) and Federal Rule of Evidence 410. (Doc. No. 249 at 7-8.)

Defendant also argues that, even if the Court were to deem the proffer agreement valid and enforceable, the Government should be precluded from introducing Defendant's statements made under the proffer agreement at trial because he did not enter into the waiver provisions therein voluntarily. (Id. at 9.) According to Defendant, he signed the proffer agreement only "because he reasonably feared – that if he refused to sign [it] – the Government would argue a breach of the cooperation addendum[,] by failing to comply with their instructions." (Id. at 10.) To that end, Defendant asserts that "[t]he signing of the proffer agreement . . . was not a product of a free and deliberate choice," but rather, "was the product of fear, intimidation, and coercion from the mandating terms of the cooperation addendum." (Id.) Although not explicitly stated in his supporting briefs, the apparent basis for Defendant's argument as to involuntariness is Defendant's belief that that his former counsel, Jeffrey Conrad, coerced him into entering into

7

the agreement with the government and that, as a result, he did not voluntarily agree to waivers contained in the agreement.[7]

## 2. Arguments of the Government

In opposition, the Government argues that it should be "permitted to introduce the defendant's proffer statement should he testify and/or present evidence or otherwise offer a position contrary to the proffer." (Doc. No. 252 at 14-15.) The Government first asserts that Defendant "clearly breached the plea agreement by withdrawing his plea of guilty." (Id. at 11.) According to the Government, due to Defendant's alleged breach of the agreement, pursuant to the terms of the plea agreement and cooperation addendum, the Government "is free to introduce the [D]efendant's proffer session during its case-in-chief, if not for the proffer agreement." (Id.) Second, the Government points to the manner in which Defendant entered into the plea agreement, stating that "the Court has already found that the [D]efendant entered into that plea agreement knowingly and voluntarily as it stated at the guilty plea, after conducting a detailed and thorough colloquy." (Id.) Additionally, the Government urges the Court to look to the language of the model proffer agreement that limits the Government's use of the proffer statement to instances in which Defendant "testifies and/or offers evidence contrary to the proffer or through counsel presents a position inconsistent with the proffer." (Id. at 12-13.)

## C. Voluntariness of the Waiver Provisions

The Court concludes that the agreement at issue is enforceable, and that Defendant waived the protections against the Government's limited use of his proffer statement knowingly and voluntarily. Because it does not appear that the issue of whether Defendant knowingly

---

[7] Defendant's arguments as to coercion on the part of his previous attorney, as well as the Court's conclusions as to such arguments following the evidentiary hearing, are discussed more fully below.

8

waived the protections of Rule 410 has been raised, in light of the parties' arguments, the Court turns to the question of whether Defendant's waiver was made voluntarily.

The apparent crux of Defendant's argument is that his agreement to the waiver was the product of coercion on the part of his former counsel, Jeffrey Conrad, involving Defendant's partner, Lauren Mohn ("Mohn"). In his supporting briefs, Defendant indicates that his decision to sign the proffer agreement "was the product of fear, intimidation, and coercion" (Doc. No. 249 at 10), and that his "reason for withdrawing from the plea agreement was that . . . Conrad . . . [sought] a third party to coerce the Defendant into pleading guilty" (Doc. No. 257 at 7). As demonstrated by the testimony presented at the evidentiary hearing held on May 4, 2018, the third party to whom Defendant is referring appears to be Mohn. In essence, Defendant maintains that in 2017, Conrad exercised undue influence over Defendant – which resulted in him initially agreeing to a plea deal and making certain statements in the course of the proffer agreement – by convincing Mohn, who would in turn persuade Defendant, that Defendant must enter into a plea agreement instead of pursuing a trial in the instant action.

The Court concludes that the evidence of record demonstrates that Defendant's waiver was made voluntarily. As an initial matter, the Court notes that the relevant documents establish that Defendant signed and understood the substance of the plea agreement, addendum to the plea agreement, and model proffer agreement. (Doc. No. 252, Exs. 1, 2, 3.) Moreover, during the change-of-plea hearing on May 8, 2017, the Court explicitly found that Defendant was "fully alert, competent, and capable of entering an informed plea," and that the plea was "knowing and voluntary." (Id., Ex. 4 at 25: 4-6.) Additionally, when asked by the Court whether he was satisfied with his counsel's representation of him, Defendant answered in the affirmative. (Id. at 4: 13-14.)

9

In addition, the Court finds that the testimony presented at the May 4 evidentiary hearing lends further support to the conclusion that Defendant's waiver was voluntary. While being questioned by Defendant as to a phone call that took place between himself and Mohn prior to Defendant entering the plea agreement, Conrad admitted to referring to Defendant's case as a "train wreck," in light of what he considered to be overwhelming inculpatory evidence against Defendant. Conrad stated further that he believed Defendant should agree to a plea, rather than pursue a trial, as a result of his own professional judgment and what he saw as Defendant's best interests. Conrad's conveyance of such a belief to Mohn – which resulted from his professional judgment as to the benefits of a plea deal compared to those of a trial – does not render Defendant's entrance into a plea agreement involuntary, as such commentary from counsel did not prevent Defendant from making a decision that was "the product of a free and deliberate choice rather than intimidation, coercion or deception." See United States v. Velasquez, 885 F.2d 1076, 1088 (3d Cir. 1989) (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)); see also United States v. Sellers, 502 F. App'x 194, 199 (3d Cir. 2012) (concluding waiver was knowing and voluntary and noting that "counsel testified . . . that he advised [the defendant] of the risks and rewards attendant to entering into the proffer agreement"); United States v. Mitchell, 633 F.3d 997, 1002 (10th Cir. 2011) (stating that "[t]he influence of [the defendant's] trial counsel did not render his plea involuntary" when it was "apparent counsel believed the government's offer was a good one, and like any competent lawyer assessing the pros and cons for her client, she gave [the defendant] her most candid advice").

Moreover, the Court cannot conclude from either Defendant's or Mohn's testimony that Conrad's use of Mohn to urge Defendant to plead guilty rendered the plea involuntary. Based on the testimony offered at the hearing on May 4 and the Court's observations of Defendant

10

representing himself at the hearing, the Court finds Defendant to be very intelligent, articulate, literate, and composed. His and Mohn's account of their discussions surrounding the proposed plea agreement do not support a finding that Defendant's decision to plead guilty was coerced or even unduly influenced by Mohn such that his plea was rendered involuntarily. Accordingly, the Court concludes that Defendant entered the plea agreement knowingly and voluntarily, and as such, he waived the protections afforded by Rule 410 with regard to statements made in connection with the plea agreement and proffer session.[8]

## IV. CONCLUSION

For the reasons stated above, Defendant's motion in limine (Doc. No. 248), is denied to the extent Defendant presents evidence at trial that is contradictory to the proffer statement. An appropriate Order follows.

s/ Yvette Kane<br>
Yvette Kane, District Judge<br>
United States District Court<br>
Middle District of Pennsylvania

---

[8] As the Government notes, "[t]he model proffer agreement limits the government's use of the proffer statement" in that it "limits the government's ability to introduce [such] evidence unless the defendant testifies and/or offers evidence contrary to the proffer or presents a position inconsistent with the proffer." (Doc. No. 252 at 14) (internal quotation marks omitted). The Third Circuit has upheld waivers including such a limitation. See, e.g., Hardwick, 544 F.3d at 570 (permitting enforcement of waiver in instances when the Government seeks to rebut evidence or arguments offered by the defendant). The Court concludes, therefore, that the Government is permitted to introduce evidence of Defendant's proffer statement in the event Defendant presents evidence or testimony that contradicts the proffer.