**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DEREK PELKER,** | : | |
| **Petitioner** | : | **No. 1:16-cr-00240-1** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| **Respondent** | : | |

**<u>MEMORANDUM</u>**

This matter is before the Court on Petitioner Derek Pelker ("Petitioner")'s motion to

vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 514) and his

motion for appointment of counsel (Doc. No. 529). For the following reasons, the Court will

deny both motions.

**I.      BACKGROUND**

In 2015, the Pennsylvania State Police ("PSP") investigated a York County bank robbery

that occurred in April of that year. (Doc. No. 514 at 4.) During the ensuing months, the Federal

Bureau of Investigation ("FBI") began to assist in the PSP's investigation. (<u>Id.</u>) Specifically, the

FBI and PSP worked together to create a commercial, using recordings of the bank's video

surveillance, to solicit help from the general public in order to identify suspects depicted in the

video recording. (Doc. No. 514-1 at 2.) The commercial led to the disclosure of information

relating to the robbery. (<u>Id.</u> at 5, 7.) The FBA and PSP also shared information with one

another, conducted joint interviews of witnesses and suspects, and used the information obtained

to further the investigation into the robbery. (<u>Id.</u> at 17, 19, 25, 27, 29.)

Following its investigation, in April 2016, the PSP apprehended Petitioner, whereupon he

was arraigned, on April 8, 2016, by the state court on robbery charges. (<u>Id.</u> at 27, 36.) A PSP

trooper later applied for a search warrant—at the behest of an FBI agent—to take a saliva sample

from Petitioner using a buccal swab.  (Id. at 27; Doc. No. 402 at 95.)  The PSP sent the swab to

an FBA laboratory for DNA analysis.  (Doc. Nos. 514-1 at 27, 402 at 95.)  The state court

scheduled an April 22, 2016 preliminary hearing, which was twice rescheduled—the first time to

May 26, 2016, due to the assigned judge's unavailability, and the second time to July 18, 2016,

at the federal government's request (apparently unbeknownst to Petitioner) and without

opposition from Petitioner's then-counsel.  (Doc. No. 514-1 at 36, 38.)

In August 2016, federal grand juries returned two indictments charging Petitioner and

others with armed bank robbery (in violation of 18 U.S.C. § 2113) and related charges.  (Doc.

No. 1.)  The charges stemmed from the York County robbery and another robbery that occurred

in April 2016 in Lebanon County.  (Id.); United States of America v. Pelker, No. 1:16-cr-00241

(M.D. Pa. filed Aug. 24, 2016).  Petitioner entered pleas of not guilty to all counts.  (Doc. No.

26); United States of America v. Pelker, No. 1:16-cr-00241 (M.D. Pa. filed Aug. 24, 2016), ECF

No. 26.[1]  Meanwhile, in state court, Petitioner filed pretrial motions claiming that "the delay in

his state proceedings to assist the federal government violated his constitutional rights and state

procedural rules."  (Doc. Nos. 514 at 5, 514-1 at 60-61.)  Requesting dismissal of all state

charges pending against him, Petitioner asserted that the state prosecution was being pursued in

bad faith and was a sham for the federal prosecution.  (Doc. Nos. 514 at 5, 514-1 at 60-61.)  The

state court scheduled a hearing on Petitioner's motions, hours before which the prosecution nolle

prossed all charges against him.  (Doc. Nos. Doc. Nos. 514. 514-1 at 65.)

As the federal prosecution of Petitioner proceeded, the Court appointed Petitioner counsel

and scheduled a November 2016 jury trial,[2] which was later continued, at Petitioner's request, to

---

[1] Petitioner's codefendants ultimately entered guilty pleas.

[2] At the time, former District Judge John E. Jones, III was presiding over the case.  The case was
reassigned to the undersigned in late 2017 when Judge Jones recused himself.  (Doc. No. 206.)

February 2017.  (Doc. Nos. 25, 52, 60, 62.)  In the interim, in late 2016, the Court granted

Petitioner's counsel leave to withdraw from Petitioner's representation, terminated him as

counsel, and appointed Petitioner new counsel, Jeffrey A. Conrad ("Attorney Conrad").  (Doc.

Nos. 69-70.)  The Court consolidated the two indictments under the above-captioned case

number and continued jury selection and trial to May 9, 2017.  (Doc. No. 91.)

The Government filed a five-count superseding information on May 8, 2017, charging

Petitioner with another armed bank robbery that occurred in May 2015.  (Doc. No. 110.)  On the

same day, Petitioner entered a plea of guilty on the superseding information.  (Doc. No. 116).

During the course of plea discussions, Petitioner signed a plea agreement, an addendum to the

plea agreement, and a model proffer agreement.  (Doc. No. 111, 252, Ex. 1-3.)  The plea

agreement reflected the agreement that Petitioner would receive a sentence of twenty-five years'

imprisonment.  (Doc. No. 111 at 9.)  The plea agreement further provided:

> Remedies for Breach.  The defendant and the United States agree that in the event
> the court concludes that the defendant has breached the Agreement:
>
> (a) Any evidence or statements made by the defendant during the cooperation phase
> will be admissible at any trials or sentencings.

(Id., Ex. 1 at 21.)  The addendum to the plea agreement provided that "[t]he United States agrees

that any statements made by [Petitioner] during the cooperation phase of this Agreement shall

not be used against the [Petitioner] in any subsequent prosecutions unless and until there is a

determination by the court that [Petitioner] has breached this Agreement."  (Id., Ex. 2 at 2.)

The model proffer agreement, which contains a provision waiving the application of Rule

410 to the proffer statement,[3] provided that: "[e]xcept as set forth below, no statements or

---

[3] The waiver provision provided that "there will be no limitations on the right of the United
States to make derivative use of the statements and other information provided by [Defendant]."
(Doc. No. 252, Ex. 3 ¶ 3.)  The waiver provision further provided that Petitioner "agrees that

3

information provided by [Petitioner] in the proffer will be used against him in the government's

case-in-chief in any criminal case other than a prosecution for perjury, false statements, or

obstruction of justice."  (Id. ¶ 2.)  The agreement also provided that, "[i]n the event [Petitioner] is

a witness or party at any trial . . . and testifies and/or offers evidence contrary to the proffer or

through counsel presents a position inconsistent with the proffer, the United States may use

[Petitioner] statements and the information derived directly or indirectly from the

proffer . . . including [in] its case-in-chief, and for impeachment, cross-examination, and

rebuttal."  (Id. ¶ 4.)

The Court deferred acceptance of Petitioner's plea pending its review of the presentence

report.  Petitioner thereafter engaged in a proffer session with the Government during which he

admitted to criminal conduct for which he ultimately faced additional charges.  (Doc. No. 514 at

7, 9.)  He then moved, on June 16, 2017, to withdraw his guilty plea.  (Doc. No. 118.)  The Court

denied his motion (Doc. No. 119), granted Attorney Conrad permission to withdraw as counsel,

and appointed Petitioner new counsel, John A. Abom ("Attorney Abom").  (Doc. Nos. 120, 127-

28.)  Petitioner filed a second motion to withdraw his guilty plea, and the Court granted his

motion and set his trial to commence on October 10, 2017.  (Doc. Nos. 137, 142, 151.)  In doing

so, the Court noted that the relief Petitioner "sought was unnecessary inasmuch as the Court

never formally accepted his plea."  (Doc. No. 151 at 1 n.1.)

On September 7, 2017, Petitioner moved for leave to proceed pro se.  (Doc. No. 155.)

Following an extensive colloquy (Doc. No. 504), and upon Petitioner's execution of a waiver of

---

Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 do not govern such
derivative use."  (Id. ¶ 3(b).)  Under Rule 410, "a statement made during plea discussions with an
attorney for the prosecuting authority if the discussions did not result in a guilty plea or they
resulted in a later-withdrawn guilty plea."  See Fed. R. Evid. 410(a)(4).

counsel (Doc. No. 183), the Court granted him leave to proceed pro se and appointed Attorney

Abom as standby counsel (Doc. No. 186).  During his colloquy with the Court, Petitioner stated:

"I believe that I could create a meaningful defense to attack the Government's case and that I

have the competency and the level of intelligence to submit pretrial motions to challenge their

case prior to trial as well as within trial."  (Doc. No. 504 at 13.)

Around the same time, the Government filed a twelve-count second superseding

indictment ("SSI"), adding charges relating to another bank robbery.  (Doc. Nos. 163, 203.)

Petitioner pleaded not guilty to all twelve counts in early 2018.  (Doc. 227.)  After being granted

extensions of time to do so (Doc. Nos. 234-35, 237, 241), Petitioner filed four pretrial motions

by which he sought orders: (1) precluding the Government "from introducing [his] proffer

statement under the proffer agreement at trial" (Doc. Nos. 248); (2) dismissing the SSI based on

federal authorities' "shocking, outrageous, and intolerable" investigative techniques, including

their request that state prosecutors continue his preliminary hearing (Doc. Nos. 296, 307);

(3) dismissing the SSI based on Attorney Conrad's alleged ineffective assistance in "usurping

[Petitioner]'s demand for a trial and employing Ms. Mohn," his girlfriend, "to coerce him into

pleading guilty" (Doc. No. 298); and (4) dismissing several counts of the SSI based on the

contention that he had absolute immunity from the Government for the information he provided

in his May 8, 2017 proffer (Doc. No. 273 at 1, 10).  The Court scheduled an evidentiary hearing

for May 4, 2018, continuing jury selection and trial to May 14, 2018.  (Doc. No. 277.)  The Court

later denied all four pretrial motions.  (Doc. Nos. 349, 356.)

Petitioner's four-day trial, at which he represented himself, ended on May 18, 2018,

when the jury found him guilty on all counts.  (Doc. No. 404.)  In January 2019, Petitioner filed

post-trial motions raising seven contentions, including that the Court abused its discretion when

it denied his request for a continuance of trial.  (Doc. No. 463.)  The Court denied Petitioner's

post-trial motions (Doc. Nos. 476-77) and sentenced him to 533 months' imprisonment (Doc.

No. 498).  Petitioner appealed, and the United States Court of Appeals for the Third Circuit

appointed Attorney Abom to represent him.  See United States v. Pelker, 821 F. App'x 93, 94

(3d Cir. 2020) (unreported).  The Third Circuit ultimately affirmed this Court's judgment of

conviction and sentence in mid-2020.  See id. at 98.  Neither Petitioner nor Attorney Abon filed a

petition for writ of certiorari with the United States Supreme Court.

     Petitioner filed his pending § 2255 motion in June 2021.  (Doc. No. 514.)  The

Government filed a brief in opposition on September 29, 2021 (Doc. No. 522), and Petitioner

filed a reply brief on December 28, 2021 (Doc. No. 530), along with a motion for appointment of

counsel (Doc. No. 529).  Because Petitioner's § 2255 motion is fully briefed and the time for

filing an opposition to his motion for appointment of counsel has lapsed, both motions are ripe

for disposition.

## II.    LEGAL STANDARD

     Under 28 U.S.C. § 2255(a), a federal prisoner may file a motion requesting that the

sentencing court vacate, set aside, or correct his sentence on the basis "that the sentence was

imposed in violation of the Constitution or laws of the United States, or that the [C]ourt was

without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum

authorized by law, or is otherwise subject to collateral attack."  See 28 U.S.C. § 2255(a).

However, § 2255 does not afford a remedy for all errors that may have been made at trial or

during sentencing.  See United States v. Essig, 10 F.3d 968, 977 n.25 (3d Cir. 1993) (citing

United States v. Addonizio, 442 U.S. 178, 185 (1979)).  Rather, § 2255 is implicated only when

the alleged error raises "a fundamental defect which inherently results in a complete miscarriage

of justice."  See Addonizio, 442 U.S. at 185.  Under the Antiterrorism and Effective Death

Penalty Act ("AEDPA"), a petitioner has one year from the time his conviction becomes final to

file a § 2255 motion.  See 28 U.S.C. § 2244.

## III.   DISCUSSION

Petitioner raises the following three grounds in support of his § 2255 motion:

(1) The "federal government unconstitutionally colluded with state authorities and
their parallel investigation and prosecution of the same misconduct charged,
in order to obtain a tactical advantage over [] Petitioner in violation of
fundamental principles of Federalism, Due Process, and Equal Protection of
Law";

(2) Attorney Conrad provided ineffective assistance of counsel by "deceiving []
Petitioner and having a third party coerce him into pleading guilty, despite his
demand for a trial," resulting in Petitioner's disclosure of an incriminating
proffer;

(3) Petitioner's right to file a petition for a writ of certiorari in the United States
Supreme Court "should be reinstated due to the interference the global
pandemic had on his access to the institutional law library and his ability to
file said petition."

(Doc. No. 514 at 3-4, 7, 12.)  The Court addresses each ground in turn below.

### A.   Ground One: Unconstitutional Collusion and Cooperation between Federal
and State Authorities

Ground One of Petitioner's motion is based on alleged constitutional violations relating

to federal and state authorities' cooperation and joint investigation into Petitioner's crimes of

conviction.  (Doc. No. 514 at 3-7.)  Petitioner argues that his rights were violated because "both

sovereigns exchanged information with one another, collectively interviewed witnesses,

interviewed several alleged defendants, used the information obtained therefrom to discover

additional witnesses and or persons of interest, and collaboratively strategized investigative

ta[c]tics."  (Id.)  Petitioner additionally argues that the federal government used the State's

"prosecutorial mechanisms to further [its] interest in this matter" without disclosing their

cooperative efforts to Petitioner.  (Id. at 4-5.)

Based on these and similar allegations, Petitioner asserts a variety of claims, including violations of his due process, equal protection, and state speedy trial rights, an abuse of process claim, and claims for violations of principles of federalism and separation of powers.  (Doc. No. 530 at 13-24.)  He alleges that federal authorities, in aiding the Commonwealth with its investigation and prosecution and engaging in such parallel conduct, caused not only the violations of his federal and state constitutional rights but also of state criminal procedural rules concerning the timeliness of his state court proceedings.  (Id. at 13-17.)

Upon careful consideration of Petitioner's claims, the parties' briefing, and the record, the Court concludes that Petitioner has not established that his sentence and conviction in this case was the product of violations of his constitutional rights.  As an initial matter, the Court agrees with the Government that Petitioner defaulted on the claims raised in Ground One because he could have raised them in his direct appeal but failed to do so.  See Hodge v. United States, 554 F.3d 372, 379 (3d Cir. 2009) (noting that "a [§ 2255] movant has procedurally defaulted all claims that he neglected to raise on direct appeal").  Indeed, he himself asserts that he raised similar or identical claims before the state court and before this Court, and he relies on the same arguments and evidence in asserting his claims here.  There is no reason why he would have been unable to raise the claims in a direct appeal.  In any event, for essentially the same reasons discussed below, his claims under Ground One have no merit.

That Petitioner defaulted on his claims in Ground One does not end the Court's analysis. "[C]ourts will exempt a movant from that rule if he can prove either that he is actually innocent of the crime for which he was convicted, or that there is a valid cause for the default, as well as

prejudice resulting from the default." See Hodge, 554 F.3d at 379.[4]  Petitioner does not argue that he is actually innocent of his crimes of conviction, but he does argue that Attorney Abom was ineffective for failing to raise these claims on direct appeal.  (Doc. No. 530 at 23-24.)  A claim of ineffective assistance of counsel can, in some circumstances, form a basis for excusing a defaulted claim.  See Hodge, 554 F.3d at 379.

The question remains whether Petitioner has established that Attorney Abom provided constitutionally deficient representation by failing to raise the claims in Ground One in Petitioner's direct appeal.  A collateral attack of a sentence based upon a claim of ineffective assistance of counsel must meet a two-part test established by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984).  See George v. Sively, 254 F.3d 438, 443 (3d Cir. 2001).  The first Strickland prong requires Petitioner to "establish first that counsel's performance was deficient."  See Jermyn v. Horn, 266 F.3d 257, 282 (3d Cir. 2001).  This prong requires Petitioner to show that counsel made errors "so serious" that counsel was not functioning as guaranteed under the Sixth Amendment.  See id.  Petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms.  See id. (citing Strickland, 466 U.S. at 688).  However, "[t]here is a 'strong presumption' that counsel's performance was reasonable."  See id.

Under the second Strickland prong, Petitioner "must demonstrate that he was prejudiced by counsel's errors."  See id.  This prong requires Petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  See id. (quoting Strickland, 466 U.S. at 694).  Reasonable probability is defined

---

[4] In Hodge, the Third Circuit concluded that the petitioner established cause to excuse a defaulted claim.  See Hodge, 554 F.3d at 380.  In that case, however, the petitioner had instructed his counsel to file a direct appeal, but his counsel failed to do so.  See id.

as "a probability sufficient to undermine confidence in the outcome." See id. (quoting

Strickland, 466 U.S. at 694). In the context of a petitioner who has entered a guilty plea, "the

petitioner demonstrates prejudice by showing that 'there is a reasonable probability that, but for

counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'"

See Arnold v. Superintendent SCI Frackville, 322 F. Supp. 3d 621, 632 (E.D. Pa. 2018) (citing

Hill v. Lockhart, 474 U.S. 52, 59 (1985); Boyd v. Waymart, 579 F.3d 330, 350 (3d Cir. 2009)).

Applying the Strickland standard here, the Court concludes that Petitioner has failed to

establish that Attorney Abom provided ineffective assistance of counsel by failing to raise the

claims asserted in Ground One on direct appeal. Attorney Abom cannot be faulted for "failing to

raise a meritless claim," see Ross v. Dist. Attorney of the Cnty. of Allegheny, 672 F.3d 198, 211

n. 9 (3d Cir. 2012), and there is no merit to Petitioner's claim that his rights were violated due to

federal and state authorities' cooperative efforts in investigating and pursuing his crimes of

conviction. Indeed, cooperation "between federal and state officials not only do[es] not offend

the Constitution but [is] commonplace and welcome." See United States v. Leathers, 354 F.3d

955, 960 (8th Cir. 2004). Such cooperation "is to be desired and encouraged, for cooperative

federalism in this field can indeed profit the Nation and the States in improving methods for

carrying out the endless fight against crime." See Bartkus v. People of State of Ill., 359 U.S.

121, 168-69 (1959); see also, e.g., United States v. Mardis, 600 F.3d 693 (6th Cir. 2010) (noting

that investigations jointly conducted by federal and state authorities are "an admirable use of

resources that the courts have found not to be problematic"); United States v. Hernandez, 260

F.3d 621 (5th Cir. 2001) (noting that joint "federal/state cooperation is permissible").[5]

---

[5] In connection with this argument, Petitioner asserts that his federal prosecution was an unconstitutional sham and merely a ruse to gain some tactical advantage. However, in asserting this contention, Petitioner relies on inapplicable case law involving double jeopardy claims,

Furthermore, assuming that constitutional and procedural violations in a state court criminal proceeding can give rise to a § 2255 claim in this Court, Petitioner has not established constitutional violations arising from his state court prosecution.  Petitioner claims that the federal government's request that state prosecutors delay his preliminary hearing in state court violated his due process rights and principles of federalism and separation of powers (Doc. No. 530 at 13-15, 19-21)—but as the Court previously noted in denying Petitioner's pretrial motions, nothing suggests that "continuance of [his] preliminary hearing amount[ed] to a constitutional violation or offend[ed] the concept of federalism" (Doc. No. 356 at 4-5); see Com. ex rel. Buchanan v. Verbonitz, 581 A.2d 172, 175 (Pa. 1990) (noting "[t]here is no federal or state constitutional right to a preliminary hearing"); Vaughn v. Kiel, No. 21-cv-15194, 2022 WL 657642, at *6 (D.N.J. Mar. 2, 2022) (noting that a defendant "has no constitutional right to a preliminary hearing where he has been indicted by a grand jury"); cf. Commonwealth v. Dehner, No. 1282 WDA 2016, 2017 WL 710570, at *3 (Pa. Super. Ct. Feb. 22, 2017) (stating that a failure of the court to schedule a timely preliminary hearing "does not require automatic discharge of an accused").  Moreover, the federal government's cooperation with state authorities is not prohibited and does not offend principles of federalism or separation of powers, and violations of state procedural rules do not alone give rise to due process violations, as Plaintiff appears to suggest.

Petitioner also claims that the federal government, by asking state prosecutors to request a continuance of his preliminary hearing, violated his equal protection rights.  However, he has

---

which are not at issue here.  (Doc. No. 530 at 14) (citing, e.g., United States v. Perry, 79 F. Supp. 3d 524, 526 (D.N.J. 2015) (finding no double jeopardy violation, stating, "dual federal and state prosecutions do not, standing alone, represent a violation of the Fifth Amendment's proscription against double jeopardy").  His reliance on those cases is therefore misplaced.

not alleged that he is a member of a protected class and has not demonstrated that he "received different treatment from that received by other individuals similarly situated."  See Shuman ex rel. Shertzer v. Penn Manor Sch. Dist., 422 F.3d 141, 151 (3d Cir. 2005).  Petitioner asserts only that the federal and state "parallel" investigation exposed him to circumstances that other defendants do not face.  (Doc. No. 530 at 16.)  However, even assuming Petitioner belonged to a protected class, as the Court noted, supra, federal and state authorities' cooperative and joint conduct in the investigation and prosecution of criminal defendants is commonplace and even encouraged.  Plaintiff has therefore failed to establish an equal protection violation.

Another theory posited in support of Petitioner's contention that his rights were violated is that federal involvement in his state court case caused unconstitutional delays, but the alleged delays amounted, at best, to a few months, and while Petitioner asserts violations of state court procedural rules (Doc. No. 530 at 13-17), he has not demonstrated how any purported violations of those rules infringed on his constitutional rights, much less in a way that would undermine his sentence and conviction in this case.

In sum, the claims asserted in Ground One are meritless, and Attorney Abom cannot be faulted for failing to raise them in Petitioner's direct appeal.  As the Government notes, Attorney Abom did raise claims that were, although unsuccessful, of arguable merit—if he had raised the additional claims that Petitioner advances under Ground One of his motion, Attorney Abom may have weakened the strength of the arguments he did raise on direct appeal.  Accordingly, given that the claims asserted in Ground One are defaulted—and given Petitioner's failure to establish ineffective assistance of counsel excusing the default—he has failed to establish an entitlement to relief under Ground One.  Further, because Petitioner's claims in Ground One are meritless, he cannot establish prejudice for Attorney Abom's failure to raise them on direct appeal.  The Court

will therefore deny Petitioner's § 2255 motion with respect to Ground One.

**B.      Ground Two: Ineffective Assistance of Counsel; Coercive Plea**

In Ground Two of Petitioner's § 2255 motion, he asserts that Attorney Conrad provided ineffective assistance of counsel by coercing Petitioner to plead guilty to the charges in the initial superseding information with the aid of Petitioner's girlfriend, Ms. Mohn, who is alleged to have assisted Attorney Conrad to coerce a guilty plea from Petitioner despite his wish to proceed to trial.  (Doc. No. 530 at 37-43.)  Petitioner asserts that Attorney Conrad admitted that he contacted Ms. Mohn for the purpose of imploring her to convince Petitioner to plead guilty, told Ms. Mohn that Petitioner's case was a "train wreck" and that, if she loved Petitioner, she would do everything in her power to convince him to plead guilty, and represented to Ms. Mohn that Petitioner was lying if he said he had a good chance at an acquittal at trial.  (Id. at 35-36.) Petitioner avers that Ms. Mohn's subsequent communications with him were "demoralizing and made him fear that if he didn't plead guilty Ms. Mohn would leave him."  (Id. at 36.)  Petitioner further contends that Ms. Mohn did not disclose her previous conversation with Attorney Conrad until after he pleaded guilty and provided the proffer, and that he would not have accepted the plea agreement "if it wasn't for Ms. Mohn's actions."  (Id.).  Petitioner similarly argues that, but for Attorney Conrad's conduct, he would not have pleaded guilty.  (Id. at 43.)

Petitioner relatedly contends that Attorney Conrad's failure to disclose that he was "campaigning and seeking employment as a judge in Lancaster County" constituted a conflict of interest warranting vacatur of his conviction, that Attorney Conrad engaged in "overzealous plea negotiations" in violation of ethical rules that prohibit undue influence on a client's decision whether to enter a guilty plea, and that Attorney Conrad was ineffective for requiring Petitioner to provide a self-incriminating proffer against Petitioner's best interest.  (Id. at 37-46.)

The Court has thoroughly considered the claims in Ground Two of Petitioner's motion and finds them unavailing. Even if Attorney Conrad provided ineffective assistance of counsel by vehemently and unwaveringly pursuing a plea deal on Petitioner's behalf, Petitioner has not satisfied the second Strickland prong—that is, he has not established a reasonable probability that, but for Attorney Conrad's conduct, he would not have entered a plea of guilty. See Arnold, 322 F. Supp. 3d at 632. As is the case with Ground One of Petitioner's motion, Petitioner previously raised the claims advanced in Ground Two in one of his pretrial motions. Petitioner argued that he was coerced into entering into the plea agreement and model proffer agreement by Attorney Conrad, who enlisted the assistance of Petitioner's girlfriend, Ms. Mohn, in order to coerce Petitioner to enter a guilty plea and sign the relevant agreements. (Doc. No. 257 at 7, 10.) The Court rejected Petitioner's claims, reasoning as follows:

> The Court concludes that the evidence of record demonstrates that [Petitioner]'s waiver was made voluntarily. . . . [T]he relevant documents establish that [Petitioner] signed and understood the substance of the plea agreement, addendum to the plea agreement, and model proffer agreement. Moreover, during the change-of-plea hearing . . . , the Court explicitly found that [Petitioner] was "fully alert, competent, and capable of entering an informed plea," and that the plea was "knowing and voluntary." Additionally, when asked by the Court whether he was satisfied with his counsel's representation of him, [Petitioner] answered in the affirmative.
>
> In addition, the Court finds that the testimony presented at the [] evidentiary hearing [on Petitioner's pretrial motions] lends further support to the conclusion that [his] waiver was voluntary. While being questioned by [Petitioner] as to a phone call that took place between himself and Mohn prior to [Petitioner] entering the plea agreement, Conrad admitted to referring to [Petitioner]'s case as a "train wreck," in light of what he considered to be overwhelming inculpatory evidence against [Petitioner]. Conrad stated further that he believed [Petitioner] should agree to a plea, rather than pursue a trial, as a result of his own professional judgment and what he saw as [Petitioner]'s best interests. Conrad's conveyance of such a belief to Mohn—which resulted from his professional judgment as to the benefits of a plea deal compared to those of a trial—does not render [Petitioner]'s entrance into a plea agreement involuntary, as such commentary from counsel did not prevent [Petitioner] from making a decision that was "the product of a free and deliberate choice rather than intimidation, coercion or deception." See United States v. Velasquez, 885 F.2d 1076, 1088 (3d Cir. 1989) (quoting Moran v. Burbine, 475

U.S. 412, 421 (1986)); see also United States v. Sellers, 502 F. App'x 194, 199 (3d Cir. 2012) (unreported) (concluding waiver was knowing and voluntary and noting that "counsel testified . . . that he advised [the defendant] of the risks and rewards attendant to entering into the proffer agreement"); United States v. Mitchell, 633 F.3d 997, 1002 (10th Cir. 2011) (stating that "[t]he influence of [the defendant's] trial counsel did not render his plea involuntary" when it was "apparent counsel believed the government's offer was a good one, and like any competent lawyer assessing the pros and cons for her client, she gave [the defendant] her most candid advice").

> Moreover, the Court cannot conclude from either [Petitioner]'s or Mohn's testimony that Conrad's use of Mohn to urge Defendant to plead guilty rendered the plea involuntary. Based on the testimony offered at the [evidentiary] hearing [relating to the pretrial motions] . . . and the Court's observations of [Petitioner] representing himself at the hearing, the Court finds [Petitioner] to be very intelligent, articulate, literate, and composed. His and Mohn's account of their discussions surrounding the proposed plea agreement do not support a finding that [Petitioner]'s decision to plead guilty was coerced or even unduly influenced by Mohn such that his plea was rendered involuntarily. Accordingly, the Court concludes that [Petitioner] entered the plea agreement knowingly and voluntarily, and as such, he waived the protections afforded by Rule 410 with regard to statements made in connection with the plea agreement and proffer session.

(Doc. No. 349 at 9-11) (internal citations to the record omitted).

The same reasoning applies with equal force to Petitioner's arguments in his § 2255 motions. The transcript of the change of plea hearing indicates that: (1) Petitioner was clearly advised of all his rights and the provisions and relevant requirements contained in his plea agreement; (2) Petitioner unequivocally represented that he was of clear mind, was pleading guilty freely and voluntarily, and was not pleading guilty because of any threats or coercion; (3) Petitioner understood the terms of his plea agreement and the consequences of entering a plea of guilty; and (4) Petitioner agreed with the plea agreement and clearly and unequivocally pleaded guilty without reservation. (Doc. No. 135.) Attorney Conrad, during the evidentiary hearing held with respect to Petitioner's pretrial motions, testified to the thoroughness of his discussions with Petitioner concerning the plea agreement and related documents. (Doc. No. 522 at 23.) Attorney Conrad specifically stated that he and Petitioner covered "the guilty plea line

for line" and the "addendum line for line," and that Petitioner "would parse over the documents before he would sign anything." (Doc. No. 507 at 21.) Attorney Conrad also noted, as the Court did in denying Petitioner's pretrial motions, that Petitioner "is sharp intellectually" and "spends his time looking at documents" and "looking at the law." (Id. at 30.)

These circumstances demonstrate the voluntariness of Petitioner's guilty plea, and his arguments to the contrary—i.e., that Attorney Conrad failed to represent his best interests in violation of ethical rules, and that Ms. Mohn convinced him to plead guilty—do not render his plea involuntary. See Burt v. Titlow, 571 U.S. 12, 13 (2013) (noting that a "lawyer's ethical violations do not make the lawyer per se ineffective," and that the Sixth Amendment does not "guarantee the right to perfect counsel"); United States v. Sedlak, No. 1:09-cr-00079-01, 2015 WL 1033981, at *17 (M.D. Pa. Mar. 10, 2015) (collecting cases and holding that a spouse's threats that the defendant "would not see his children if he did not plead guilty" did not render the defendant's plea involuntary); Blackledge v. Allison, 431 U.S. 63, 74 (1977) (noting that "[s]olemn declarations in open court carry a strong presumption of verity," and further noting that "representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings").

As Petitioner nevertheless appears to acknowledge, there is a line of case law pursuant to which prejudice under Strickland may be presumed if an actual conflict of interest can be shown between an attorney's interests and his client's interests. As discussed, supra, Petitioner argues that Attorney Conrad had a conflict of interest relating to his campaign for a judgeship. The doctrine relating to the presumption of prejudice, however, originated in the context of multiple

representation, and to the extent it has been applied in other contexts,[6] it requires a showing that "(1) some plausible alternative defense strategy might have been pursued, and (2) the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests."  See Hester v. Pierce, No. 13-cv-00816, 2016 WL 5539585, at *5 (D. Del. Sept. 28, 2016) (citing United States v. Morelli, 169 F.3d 798, 810 (3d Cir. 1999)).  "In a conflict of interest situation prejudice will be presumed only if the defendant proves that his counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance."  United States v. Costanzo, 740 F.2d 251, 259 (3d Cir. 1984) (internal quotation marks omitted).

Here, the fact that Attorney Conrad was campaigning for judicial office falls short from demonstrating that he persuaded Petitioner to enter into the plea agreement due to other loyalties or interests.  Indeed, the record indicates the opposite, i.e., that Attorney Conrad used his professional judgment to reasonably conclude that Petitioner would fare better if he pleaded guilty rather than proceed to trial.  Nothing in the record indicates that Attorney Conrad actively represented conflicting interests or that an actual conflict affected his representation.

Accordingly, because the evidence of record demonstrates that Petitioner entered into the plea agreement and pleaded guilty voluntarily, he has failed to demonstrate prejudice, i.e., that, but for Attorney Conrad's conduct, Petitioner would not have pleaded guilty and provided the related proffer and would have instead proceeded to trial.  Accordingly, the Court will deny Petitioner's § 2255 motion as to Ground Two.

---

[6] As one court has observed, "the Supreme Court [has] questioned the applicability of [the doctrine] to conflicts arising outside the context of multiple representation . . . ."  See Hester v. Pierce, No. 13-cv-00816, 2016 WL 5539585, at *5 (D. Del. Sept. 28, 2016) (citing Mickens v. Taylor, 535 U.S. 162, 175 (2002) (noting "the high probability of prejudice arising from multiple concurrent representation, and the difficulty of proving that prejudice")).

### C.     Ground Three: The COVID-19 Pandemic on Petitioner's Inability to File a Petition for a Writ of Certiorari

Turning to Ground Three of Petitioner's § 2255 motion, Petitioner has not provided any support for his argument that he suffered constitutional violations due to his alleged inability to file a timely petition for writ of certiorari with the Supreme Court.  Moreover, Petitioner had ample time to file a petition.  Ordinarily, Petitioner would have had ninety days from the denial of his direct appeal (on July 29, 2020) to file a petition for a writ of certiorari (by October 27, 2020).  See U.S. Sup. Ct. R. 13(1).  However, in March 2020, the Supreme Court extended the ninety-day deadline by an additional sixty days in light of the COVID-19 pandemic.[7]  Applying that extension here, Petitioner had until December 26, 2020—about five months—to file a petition with the Supreme Court.  Additionally, if Petitioner submitted a petition that did not comply with the Supreme Court's rules, he would have been entitled to an additional sixty days to remedy the deficiencies.  See U.S. Sup. Ct. R. 14.  Given the proficiency with which Petitioner has presented his pro se motions and briefing throughout his criminal proceedings, the Court discerns no basis to conclude that his constitutional rights were violated due to a complete inability to file a petition for writ of habeas corpus.  As such, the Court will deny Petitioner's § 2255 motion in its entirely, as none of the grounds raised in the motion entitles him to relief.

### D.     Evidentiary Hearing

Section 2255(b) advises that a petitioner may be entitled to a hearing on his motion.  The decision to hold a hearing is wholly within the discretion of the district court.  See Gov't of V.I. v. Forte, 865 F.2d 59, 62 (3d Cir. 1989).  If "the files and records of the case conclusively show

---

[7] See United States Supreme Court General Order dated March 19, 2020, available at www.supremecourt.gov/announcements/COVID-19.aspx.

that the prisoner is entitled to no relief," the Court need not hold a hearing.  See 28 U.S.C.

§ 2255(b).  In determining whether a hearing must be held regarding claims of ineffective

assistance of counsel, the Court must first "accept as true the nonfrivolous allegations in the

petition" and then "determine whether, on the existing record, those claims that are nonfrivolous

conclusively fail to show ineffective assistance of counsel."  See United States v. Dawson, 857

F.2d 923, 927-28 (3d Cir. 1988); see also United States v. Arrington, 13 F.4th 331, 334 (3d Cir.

2021) (applying standard as set forth in Dawson).  Here, assuming the truth of Petitioner's

nonfrivolous allegations, the Court finds that he has conclusively failed to establish ineffective

assistance of counsel as to either the defaulted claims asserted in Ground One or the claims of

ineffective assistance of counsel asserted in Ground Two.  Further, his claims advanced in

Ground Three are conclusively meritless.  Accordingly, the Court finds no reason to hold an

evidentiary hearing in this matter.

### E.    Certificate of Appealability

In proceedings brought under § 2255, a petitioner cannot appeal to the circuit court unless

a certificate of appealability ("COA") has been issued.  A court may not issue a COA unless "the

applicant has made a substantial showing of the denial of a constitutional right."  See 28 U.S.C.

§ 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could

disagree with the district court's resolution of his constitutional claims or that jurists could

conclude the issues presented are adequate to deserve encouragement to proceed further."

Miller-El v. Cockrell, 537 U.S. 322 (2003).  "When the district court denies a habeas petition on

procedural grounds without reaching the prisoner's underlying constitutional claim, a COA

should issue when the prisoner shows, at least, that jurists of reason would find it debatable

whether the petition states a valid claim of the denial of a constitutional right and that jurists of

19

reason would find it debatable whether the district court was correct in its procedural ruling."

Slack v. McDaniel, 529 U.S. 473, 484 (2000).  In this case, the Court concludes that jurists of

reason would not find the disposition of this case debatable.  Accordingly, the Court will not

issue a COA.

## IV.    MOTION FOR APPOINTMENT OF COUNSEL

Regarding Petitioner's motion for appointment of counsel (Doc. No. 529), the Court may

appoint counsel "where a pro se prisoner in a habeas action has made a colorable claim, but lacks

the means to adequately investigate, prepare, or present the claim."  See Jones v. Bickell, No. 13-

cv-01008, 2014 WL 2547788, at *12 (E.D. Pa. June 6, 2014).  In this case, Petitioner has not

advanced a colorable claim, he has aptly prepared and briefed his motion, and he has elected to

proceed pro se in the past, including in connection with his trial.  For these reasons, the Court

will not grant Petitioner's motion for appointment of counsel.

## V.    CONCLUSION

For the foregoing reasons, the Court will deny Petitioner's § 2255 motion (Doc. No. 514)

without an evidentiary hearing, will not issue a COA, and will deny Petitioner's motion for

appointment of counsel (Doc. No. 529).  An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania